UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMON SIMON, § | | |
|     *Plaintiff*, § | | |
| § | | |
| vs. § | | CIVIL ACTION H-08-2111 |
| § | | |
| HARRIS COUNTY SHERIFF'S DEPT., *et al.*, § | | |
|     *Defendants*. § | | |

## SUMMARY JUDGMENT OPINION AND ORDER

This civil rights case brought pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1981, and Title VII is before the court on defendants' motion for summary judgment (Dkt. 29). The motion is granted in part and denied in part.[1]

**Background**

Plaintiff Amon Simon is an African-American male with a permanent form of the skin condition pseudofolliculitis barbae (PFB). Simon joined the Harris County Sheriff's Office (HCSO) in February 2004 as a detention officer in the Harris County jail. In October 2005, Simon graduated from the Sheriff's Office Academy and returned to work as a deputy at the Harris County jail.

At that time, HCSO had a no-beard policy that allowed an exception if the employee could demonstrate to the satisfaction of his bureau commander that he suffered from a condition that could only be remedied by allowing his beard to grow. In March 2006,

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including final judgment (Dkt. 10).

Simon began following his treating dermatologist's recommendation to maintain a "shadow" beard that resembles stubble due to his severe, chronic PFB. That same month, HCSO amended its policy to provide that an individual suffering from PFB shall be placed on transitional duty. The policy expressly noted that transitional duty was not intended to be permanent, and presumed that an individual with PFB will be able to shave after treatment.

In January 2007, Simon began patrol training in District III, a predominantly minority, high crime area. Simon's supervisor in District III was aware of his facial hair, and determined that his appearance was acceptable. In June 2007, Simon began working the evening shift in District IV, the Katy area —a primarily Caucasian suburb in which then-Sheriff Tommy Thomas lived. Soon thereafter, he was told by his supervisor that his facial hair was not in compliance with HCSO policy.

Simon was placed on transitional duty on June 14, 2007. While on transitional duty, he was prohibited from wearing his uniform and from openly carrying his weapon; he was also precluded working overtime, "K" time in County jails, and security-related extra jobs. Plaintiff contends that he also effectively, if not procedurally, lost the opportunity to be considered for promotion or new job assignments.

Simon's initial transitional duty assignment was a desk job, but he was quickly transferred to the property room. Property room duties include taking out trash, sweeping

2

and cleaning up, and performing other manual labor. On August 23, 2007, Simon filed an EEOC charge of race discrimination and retaliation.

In February 2008, HCSO Internal Affairs Division (IAD) began an investigation of Simon. HCSO contends this investigation was based on an anonymous tip that Simon was working an extra job in violation of policy for officers on transitional duty. When asked, Simon admitted he was working as a security guard at a car lot. Despite his admission, he was forced to take polygraph exam during which the examiner asked questions regarding his PFB. At the conclusion of the IAD investigation, Simon was suspended without pay for 3 days for violating policy against extra employment while on transitional duty.

In June 2008, Simon was placed on " restricted duty," an even more limiting status than transitional duty. Simon alleges restricted duty is accompanied by severe restriction of job opportunities and privileges as well as extremely negative perception among other officers. In July 2008, Simon filed this federal lawsuit.

**Summary Judgment Standards**

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable

jury to find for the nonmoving party.  *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

**Analysis**

Simon asserts causes of action under 42 U.S.C. §§ 1981 and 1983, as well as Title VII.  He alleges that HCSO's grooming policy violates the law both because of its adverse impact on African-Americans, and its intentional discriminatory application in his case. He also alleges that he has been retaliated against and subjected to a hostile work environment because of his complaints of discrimination.  Defendants move for summary judgment because:

(1)  Harris County Sheriff's Office is a *"non sui juris"* entity;

(2)  Plaintiff's § 1981 claim fails for lack of evidence of intentional discrimination;

(3)  Plaintiff's adverse impact claim fails because he has no evidence that other African-American deputies are similarly affected by the policy;

(4)  Plaintiff's adverse impact claim fails because defendant has a legitimate business necessity for its policy;

(5)  Plaintiff's retaliation claim fails because he has no evidence of causation; and

(6)  Plaintiff's hostile work environment claim fails because he has no evidence of severe or pervasive misconduct.

1.   *Non Sui Juris*

The Harris County Sheriff's Office does not enjoy a separate legal existence from the County, thus is not an entity with capacity to sue and be sued. *See Darby v. Pasadena Police Dept.*, 939 F.2d 311, 313 (5th Cir. 1991). The proper defendant in this case in Harris County. Defendants' motion for summary judgment dismissing Harris County Sheriff's Office, misnamed Harris County Sheriff's Department in the amended complaint, is granted.

2.   **Intentional Discrimination**

Simon sues Harris County for intentional racial discrimination in violation of § 1981 and Title VII. *See Gen. Bldg. Contractors Ass'n, Inc.*, 458 U.S. 375, 391 (1982); *Lauderdale v. Texas Dept. of Criminal Justice, Instit. Div.*, 512 F.3d 157, 166 (5th Cir. 2007). Intent may be inferred from circumstantial evidence. *Baltazor v. Holmes*, 162 F.3d 368, 376-77 (5th Cir. 1998).

Because PFB is a race-linked disease that afflicts African-American men, Harris County knew at the time it promulgated the policy that black men like Simon would be the only ones subjected to it. Simon has presented evidence that although he began maintaining a short beard in 2006, he was not subjected to any adverse employment action until June 2007 when he began patrolling in District IV, a predominately white area. Simon testifies that his supervisor in District IV, Captain Cordova, told him that while his appearance may have been acceptable in District III, it "won't fly out here" and that he

(Cordova) "couldn't take the heat" if Sheriff Thomas or his friends saw Simon "looking like that." Simon explained that he suffered from PFB and had a letter from his doctor on file, but Cordova ordered him to shave or be placed on transitional duty.[2] Simon also has presented evidence that other officers sometimes showed up for work with beards, but were not punished in any way.[3] Simon has presented sufficient evidence to survive summary judgment on his ¶ 1981 discrimination claim.

### 3. Adverse Impact

Title VII bans facially nondiscriminatory practices that have a discriminatory impact. *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971). A plaintiff pursuing such a claim must be able to show that a challenged practice has a disproportionate adverse impact on a category of persons protected by the statute. *Connecticut v. Teal*, 457 U.S. 440, 446 (1982).

There is no doubt that the challenged HCSO grooming policy has a disparate impact on African-American men. The parties have stipulated that plaintiff has a permanent form of psuedofolliculitis barbae (PFB) that prevents him from close shaving; that this condition primarily affects African-American men; and the condition is common, affecting somewhere between 10-60% of African-American men.[4]

---

[2] Ex. 2, Simon Aff., ¶ 6.

[3] *Id.* ¶ 8; Ex. 17, IAD report at 21; Ex. 23, Cordova Depo., at 44.

[4] Stipulation (Dkt. 27).

The issue then is whether the County can meet its burden to prove a business necessity for the policy. *IBEW v. Miss. Power & Light Co.*, 442 F.3d 313, 318 (5th Cir. 2006). If so, then the burden of proof shifts back to the plaintiff to show the availability of a less discriminatory alternative practice or action that would provide a comparatively effective means of meeting that goal. *Id.*; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1118 (11th Cir. 1993).

The County contends that its policy is necessary because many of its personnel are emergency "first responders" who are required to wear properly fitted respirators in the event of a crisis such as a terrorist attack. After the events of September 11, 2001, HCSO was awarded federal funds for the purchase of respirators. HCSO ordered "Millennium Respirators" in May 2004, intending to issue one to all patrol officers designated as "first responders" in the event of crisis. However, not all Harris County deputy positions are designated as "first responders," and not all those in such designated positions have been issued such a respirator. These facts tend to undermine the necessity argument.

Moreover, the County has presented no expert testimony as to the business necessity for the no-beard policy. *See Fitzpatrick*. 2 F3d. at 1119 n.6 ("An employer's subjective belief that a practice is necessary, without any supporting evidence, is plainly insufficient to justify a discriminatory practice . . . employers have been required to present convincing expert testimony demonstrating that a challenged practice is in fact required to protect employees or third parties from documented hazards." (internal citations omitted)).

The County relies on the Affidavit of current Sheriff Adrian Garcia, as well as certain national safety regulations.[5] This evidence is insufficient to establish the business necessity of the policy as a matter of law. There are fact issues on the current record as to both business necessity and the availability of a less discriminatory alternative practice that preclude summary judgment on Simon's Title VII disparate impact claim.[6]

### 4. Retaliation

In order to prove a claim of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant took adverse employment action against him; and (3) there is a causal connection between the two events. *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *Mota v. Univ. of Tex. Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). An employment action is adverse if it " well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68.

For purposes of summary judgment, the County does not contest that Simon engaged in protected activity or suffered an adverse employment action. The County

---

[5] Simon objects to the Affidavit of Adrian Garcia submitted in support of defendants' motion (Dkt. 29-1). The court overrules the objection, but finds the Affidavit nondispositive of any summary judgment issue.

[6] HCSO amended the grooming policy at issue in April 2010 in response to *Stewart v. City of Houston Police Dep't.*, No. 09-20690, 2010 WL 1286925 (5th Cir. March 30, 2010), and has restored Simon to active duty. At trial, the merits of Simon's disparate impact claim will have to be addressed separately under each policy. However, even if the new policy does not violate Title VII, if the prior policy violated Title VII then issues will remain regarding Simon's entitlement to back pay.

argues that because Simon admitted to violating HCSO policy by working an extra job while on transitional duty, he cannot prove a causal connection between his protected activity and any adverse employment action.[7]

Simon has presented evidence that after he complained about discrimination, he was reassigned from a desk job to the property room. Property room duty involved manual labor and taking out trash. He also has presented evidence that after he filed his EEOC charge, HCSO instigated an Internal Affairs Division investigation of him, subjected him to a polygraph test at which he was asked questions to determine if he was lying about having PFB, suspended him without pay for 3 days for a violating transitional duty policy against working an extra job, and moved him from transitional to restrictive duty. The fact that Simon admitted working an extra job does not completely resolve the question as to whether Simon was the victim of retaliation. Prior to the IAD investigation, Simon was moved from a desk job to the property room. And after the IAD investigation, Simon was not only disciplined with a 3-day unpaid suspension, he also was placed on restricted duty. A jury could infer that the real reason for HCSO's actions was retaliation for Simon's complaints that HCSO's grooming policy was discriminatory.

---

[7] The County's argument at the April 8, 2010 hearing that Simon's retaliation claim is barred by his failure to exhaust his administrative remedy of an appeal of the 3-day suspension is a red herring. Section 1981 does not have an exhaustion requirement, *Hines v. D'Artois*, 531 F.2d 726, 734 (5th Cir. 1976), and Simon exhausted his Title VII administrative remedy by filing a charge with the EEOC and receiving a right to sue letter.

### 5. Hostile Work Environment

Title VII protects an employee from a workplace " permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklist Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted). Whether a hostile working environment exists depends on the totality of the circumstances, " including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). In appropriate circumstances, an employer may be liable for a hostile working environment in the absence of a tangible employment decision affecting the plaintiff. *See Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 760-65 (1998); *Williams v. Admin. Review Brd.*, 376 F.3d 471, 476 (5th Cir. 2004) (" Hostile work environment claims . . . generally result from discrimination that does not culminate in a tangible or adverse employment action.").

In this case, the " harassment" of which Simon complains consists largely of consequences of tangible employment actions that Harris County took, ostensibly to enforce its policies on grooming and extra jobs. Those actions were placement on transitional duty, and later restricted duty, which allegedly resulted in restrictions on job opportunities (*i.e.*, overtime, promotions, transfers, extra work) and privileges (*i.e.*,

wearing police uniform, open carry of a weapon, building access). There is no evidence in this case of slurs, insults, ridicule, intimidation or other race-based hostility which typifies a hostile working environment claim. *Cf. Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir. 1971); *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000).

The court concludes that Simon has not met his burden to create a fact issue as to whether his treatment subjectively was so severe and pervasive as to constitute an actionable hostile work environment. The court will grant summary judgment on this claim.

## Conclusion

For the reasons stated above, defendants' motion for summary judgment is granted in part and denied in part. Specifically, Simon's claims against HCSO are dismissed. Simon's hostile work environment claim is dismissed. Simon's claims for intentional discrimination and retaliation in violation of § 1981 and Title VII, and for discriminatory adverse impact under Title VII, remain for trial.

Signed at Houston, Texas on April 12, 2010.

_____
Stephen Wm Smith
United States Magistrate Judge